IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| William Ellison, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 8:10-cv-1458-MBS-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| State of South Carolina; Warden of | ) | |
| Campbell Pre-Release Center,[1] | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 47.] At the time he filed the Petition, Petitioner was a state prisoner,[2] and he seeks

relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions

of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c),

D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit

findings and recommendations to the District Court.

---

[1] Because a prisoner's custodian is the proper respondent in a habeas corpus action, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), Respondent State of South Carolina was terminated as a party and Respondent Warden of Campbell Pre-Release Center was added as a party on August 17, 2010. [*See* Doc. 10.] Accordingly, throughout this Report and Recommendation the Court refers to Respondent Warden of Campbell Pre-Release Center as "Respondent."

[2] On July 15, 2011, Petitioner filed a notice of change of address, updating his address to a private address. [Doc. 23.] The South Carolina Department of Probation, Parole and Pardon Services' website reveals Petitioner was listed as an active offender on parole from June 30, 2011 until May 28, 2012, the supervision end date. S.C. Dep't of Prob., Parole & Pardon Servs., http://www.dppps.sc.gov/ (click "Supervised Offender Search" box, enter first name "William," enter last name "Ellison," and click "view") (last visited May 31, 2012). The Court notes it may take judicial notice of factual information located in postings on government websites. *See Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating courts "may properly take judicial notice of matters of public record."); *Tisdale v. S.C. Highway Patrol*, C/A No. 0:09-1009-HFF-PJG, 2009 WL 1491409, at *1 n.1 (D.S.C. May 27, 2009), *aff'd* 347 F. App'x 965 (4th Cir. 2009).

Petitioner filed this Petition for writ of habeas corpus on June 1, 2010.[3] [Docs. 1, 1-1, 1-3.] After Petitioner represented to the District Court that his grounds for relief were exhausted [*see* Docs. 15, 17], this Court authorized service of the Petition [Doc. 26]. On February 21, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 47, 48.] On February 22, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 49.] Petitioner filed a response in opposition on March 30, 2012. [Doc. 52.]

## BACKGROUND

At the time he filed the Petition, Petitioner was a state prisoner incarcerated at the Campbell Pre-Release Center pursuant to orders of commitment from the Clerk of Court for Orangeburg County. [Doc. 1-3 at 1.] In April 1994, Petitioner was indicted for carrying a pistol and possession with intent to distribute crack. [Docs. 48-4, 48-5.] On September 1, 1994, he pled guilty to these charges and received a suspended five year sentence on the drug charge, a suspended one year sentence on the firearms charge, two years probation, and 150 hours community service. [Docs. 48-6, 48-7.]

In May 1995, Petitioner was indicted for distribution of unlawful drugs (crack) and distribution of unlawful drugs within one-half mile of a school. [App. 219–20, 223–26.] On May 23, 1995, Petitioner proceeded to trial on these charges, where he was represented

---

[3] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on June 1, 2010. [Doc. 1 (Petition dated June 1, 2010 by Petitioner); Doc. 1-2 (envelope postmarked June 3, 2010).]

by Richard Gustafson ("Gustafson"). [App. 1.] On May 24, 1995, Petitioner was found guilty of distribution of unlawful drugs, but the jury was unable to reach a verdict regarding the charge of distribution of unlawful drugs within one-half mile of a school. [App. 112–13.] Petitioner was sentenced to 25 years imprisonment and fined $50,000. [App. 119, 249.]

**Direct Appeal of 1995 Conviction and Sentence**

Petitioner filed a direct appeal, where he was represented by Lisa T. Gregory ("Gregory") of the South Carolina Office of Appellate Defense. [Doc. 48-8 at 1.] Petitioner raised one issue in an *Anders* brief[4] to the South Carolina Court of Appeals: "The lower court erred in failing to grant [Petitioner's] motion for a directed verdict." [*Id.* at 4.] At the same time she filed the *Anders* brief, Gregory submitted a petition to be relieved as counsel. [*Id.* at 8.] Petitioner did not submit a pro se brief. On July 18, 1996, the South Carolina Court of Appeals dismissed Petitioner's appeal. [Doc. 48-9.] Respondent represents that remittitur was issued on August 20, 1996.[5] [Doc. 48 at 2.]

**Post-Conviction Proceedings**

**_First PCR Application_**

Petitioner filed an application for post-conviction relief ("PCR") from his 1995 conviction and sentence on November 7, 1996. [App. 122–30.] Petitioner alleged he was unlawfully being held in custody because of violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments. [App. 123.] Specifically, Petitioner alleged the following grounds for relief, quoted substantially verbatim:

---

[4] A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

[5] A copy of the remittitur was not included in Respondent's return to this Court.

I. Applicant first assignment of errors trial counsel did not set the grounds to impeach the State's key witness testimony at trial. 1

II. Applicant second assignment of errors that Applicant was prejudice of a misidentification and a violation of his Fifth Amendment self-incrimination. 2

III. Applicant third assignment of errors trial judge erred in deciding motion to reveal informant's identity. Court must balance public interest in protecting flow of information against individual's right to prepare his defense. 3

IV. Applicant fourth assignment of errors pretrial photographic procedure offends due process, because it was impermissibly suggestive as to give rise to very substantial likelihood of irreparable misidentification. 4

Conclusion:

The lower court erred in not granting Defendant's motion for a new trial because of lack of evidence.

[App. 128.]

On April 3, 1998, an evidentiary hearing was held concerning Petitioner's PCR application, and Petitioner was represented at the hearing by Tommy A. Thomas. [App. 136–204.] Petitioner, Gustafson, and Petitioner's mother, Cora Ann Seltzer, testified. [App. 137.] On June 8, 1998, the PCR court issued an order denying and dismissing Petitioner's PCR application. [App. 213–17.]

On April 5, 1999, M. Anne Pearce of the South Carolina Office of Appellate Defense filed on Petitioner's behalf a petition for writ of certiorari in the South Carolina Supreme Court. [Doc. 48-11.] The petition asserted the following as the sole issue presented:

Whether the lower court erred in ruling that defense counsel was not ineffective in failing to investigate and present an alibi defense.

[*Id.* at 2.]  The court denied the petition on August 18, 2000.  [Doc. 48-12.]  Respondent represents that remittitur was issued on September 6, 2000.[6]  [Doc. 48 at 3.]

### *Second PCR Application*

Petitioner filed a second PCR application on August 10, 2001, listing both the 1995 and 1994 indictments as the offenses from which Petitioner was seeking post-conviction relief.  [Doc. 48-13.]  Petitioner alleged he was unlawfully being held in custody because of violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments.  [*Id.* at 2.]  Specifically, Petitioner alleged the following grounds for relief, quoted substantially verbatim:

> (a) Trial Counsel ineffective for not seeking to suppress warrant when it lack probable cause.
>
> (B) Trial Judge did not had subject matter Jurisdiction of charge when distribution of unlawful drug indictment was defective, as it did not properly inform the Applicant of what he was prepared to meet at trial.
>
> (C) Trial counsel ineffective for not objection to state witness talking to Jury in court about the evidence, when Jury was in the process of weighing the evidence.

[*Id.*]  A hearing was held on the application on June 11, 2002, and Petitioner was represented at the hearing by Brad Hutto.  [*See* Doc. 48-15 at 1 (noting in the PCR court's order of dismissal that a hearing was held).[7]]  On June 25, 2002, the PCR court issued an order dismissing the application as successive and untimely.  [*Id.* at 3–6.]  The court also addressed the order dismissing Petitioner's first PCR application, which had stated that

---

[6] A copy of the remittitur was not included in Respondent's return to this Court.

[7] A transcript of this hearing was not included in Respondent's return to this Court.

Petitioner pled guilty to the 1995 charges instead of stating Petitioner's 1995 conviction resulted from a jury trial; the court stated Petitioner was not prejudiced by this defect. [*Id.* at 5.]

### Third PCR Application

Petitioner filed a third PCR application on July 10, 2006, seeking relief from his 1995 conviction and sentence. [Doc. 48-16.] Petitioner alleged he was unlawfully being held in custody because of ineffective assistance of counsel, subject matter jurisdiction/due process of law, and newly discovered evidence. [*Id.* at 3.] Specifically, Petitioner alleged the following grounds for relief, quoted substantially verbatim:

> (a) Atty. failed to investigate case
>
> (b) Imposed wrong sentence (1st distribution received 25 yrs Suppose to be[8]
>
> (c) informant at trial was not key informant who made drug buy
>
> Denied the right to confront accuse

[*Id.*] As to his claim of newly discovered evidence, Petitioner stated, "Appeal court refused to hear case stating Petition[er] plead guilty, which he had a <u>trial</u>." [*Id.* at 5 (emphasis in original).]

On May 21, 2008, an evidentiary hearing was held concerning Petitioner's third PCR application, and Petitioner was represented at the hearing by Carl B. Grant ("Grant"). [Doc. 48-17.] At the hearing, Grant stated Petitioner's first argument was that he was improperly sentenced for a second offense when it was actually a first offense; Petitioner stated he did not raise this issue in his first PCR application because he just discovered it. [*Id.* at 3–4.]

---

[8] The remainder of this allegation is cut off in the copy of this PCR application provided to this Court.

Grant stated Petitioner also wanted to point out that the first PCR court held certain matters were self-evident because Petitioner pled guilty, but Petitioner had a jury trial; Grant stated Petitioner found the PCR court's error to be significant and wanted to point it out. [*Id.* at 4.] On September 27, 2011, the PCR court issued an order denying and dismissing Petitioner's PCR application as successive and untimely. [Doc. 48-18.]

### Rule 60(b) Motion

On November 19, 2009, Petitioner filed a Rule 60(b) motion to correct his 1995 sentence by setting aside his 1994 conviction. [Doc. 51-1.] In his motion, Petitioner set forth two arguments:

> Did the trial judge erred for using an invalid uncounseled prior conviction to enhance Applicant current sentence when Applicant plea to the prior conviction was not knowing, voluntary, and intelligent.
>
> Trial judge erred when considering an invalid prior simple possession of crack conviction which can not be use as a career offense or consider as a controlled substance for enhancement purpose.

[*Id.* at 6.] Respondent represents that Petitioner's motion was denied on March 22, 2010 for Petitioner's failure to file the motion within a reasonable time.[9] [Doc. 48 at 5.] Petitioner appealed the decision of the lower court, but on May 21, 2010, his appeal was dismissed because of his failure to timely serve the notice of appeal on opposing counsel, pursuant to Rule 203 of the South Carolina Appellate Court Rules. [Doc. 51-2.] Remittitur was issued on June 8, 2010. [Doc. 51-3.]

---

[9] A copy of the order denying Petitioner's Rule 60(b) motion was not included in Respondent's return to this Court.

***Fourth PCR Application***

Petitioner filed a fourth PCR application on December 17, 2009, listing both the 1995 and 1994 indictments as the offenses from which Petitioner was seeking post-conviction relief. [Doc. 48-20.] Petitioner alleged he was unlawfully being held in custody because of subject matter jurisdiction, double jeopardy, miscarriage of justice, ineffective assistance of counsel, and denied due process. [*Id.* at 3.] Specifically, Petitioner alleged the following grounds for relief:

Ground I: (Subject Matter Jurisdiction)

The Applicant asserts the warrant and indictment of his current conviction is invalid, depriving the trial court of subject matter jurisdiction . . . .

***

Ground II: Double Jeopardy

***

Applicant argues the (dist. of crack within a school zone) has the same elements, carries the same time, and arise out of the same transaction or act the (dist. of crack) did. Therefore, he should not have been subject to being prosecuted for the same offense twice under two different statu[t]es. . . .

***

Ground III: Miscarriage of Justice

Applicant asserts:

(1) Prosecutor intent[ion]ally withheld the key informant from the Brady motion of disocvery for their defense.

(2) The magistrate, grand jury, nor the Applicant was aware of the informant

(3) The evidence was favorable to the accused

8

(4) It was in the possession of or known to the prosecutor

(5) It was suppressed by the prosecutor, and it was material to the guilty and punishment of the accused.

\*\*\*

Furthermore, there was another officer, Det Adams who was described by the confidential informant as an officer present when the drugs was delivered to the Det. Jenkins after the buy. The Det. Jenkins stated he was the only one who monitor the drug transaction. These conflicting statements raise questions about who telling the truth, and if the (C.I.) is telling the truth why is the Det Jenkins trying to hide the (other Det.) and whoever else is 'them' the informant was trying to describe. (See Trial transcript (C.I.) being cross examine by Applicant trial counsel)

Surely this was unjust to denied applicant the right to question the other detective in which he could have posses[s] information that would changed the result of the trial. . . .

\*\*\*

Moreover, the jury was instructed by the court to convict Applicant on both charges. (dist. of crack) & (dist of crack in school zone) That influence had prejudice Applicant in that the jury had to cont[em]plate on convicting Applicant on both charges not one or the other. For all of the above creates a miscarriage of justice.

Ground 4 & 5: Ineffective Assistance of Counsel and Denied Due Process

(1) Time afforded for investigation and preparation

(2) The experience of counsel

(3) The gravity of the charge

(4) The complexity of possible defen[s]e

(5) The accessibility of witness

***

> . . . Counsel was ineffective for not asking for a continu[ance]
> on time (knowing) he didn't had time to prepare Applicant case.
> . . .

[*Id.* at 10–18.]  On August 6, 2010, the PCR court issued a conditional order of dismissal, finding the application was successive and untimely.  [Doc. 48-22.]  A final order of dismissal was issued on December 31, 2010; in the final order, the court noted Petitioner had filed a response to the conditional order of dismissal,[10] but his response failed to demonstrate a sufficient reason for why the conditional order of dismissal should not become final.  [Doc. 48-23.]  Petitioner filed a petition for appellate review of the PCR court's decision in the Supreme Court of South Carolina.  [Doc. 48-24.]  The case was remitted to the lower court on February 23, 2011.[11]  [Doc. 48-25.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on June 1, 2010 pursuant to 28 U.S.C. § 2254.  [Docs. 1, 1-1, 1-3.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

**Ground One**:      Did the trial judge error for using an invalid & uncounseled prior conviction to enhance Applicant current sentence

*Supporting Facts*:      Applicant assert he was 17yrs. old at the time of the crime, never been represented by counsel at any previous trial, totally was ignorant at the law and its process, taking advantage of by the prosecutor in that

---

[10] A copy of Petitioner's response to the PCR court's conditional order of dismissal was not included in Respondent's return to this Court.

[11] Respondent indicates the South Carolina Supreme Court dismissed Petitioner's appeal on February 7, 2011 [Doc. 48 at 6], but no documentation of the court's dismissal was provided to this Court, aside from the February 23, 2011 remittitur.

he was manipulated by extortion to accept a plea from the state [prosecutor stated, "If you don't accept the plea you will be found guilty and receive the maximum sentence] Applicant wasn't aware of the danger of self representation by the court or an appointed attorney, the nature or maximum or minimum sentence of the crime, to be confronted with witnesses in his vaor, to have compulsory process for obtaining witnesses. . . . Applicant has the right to challenge his conviction (prior) for the 1st time when its affecting his current sentence.

**Ground Two**:        Did the trial judge erred when considering an invalid prior simple poss of crack conviction which can not be used as a career offense or consider as a controlled substance for enhancement purpose.

*Supporting Facts*:        Applicant was only 17yrs old and not 18yrs old at the time of the crime the offense was not a crime of violence or a controlled substance offense

**Ground Three**:        Applicant prior simple poss of crack conviction is not a control substance offence for enhancement purpose

*Supporting Facts*:        Controlled substance offenses are those under state and federal law prohibiting the intent to distribute or poss with the intent to distribute.

[Doc. 1-3.] Petitioner also argues that, to the extent the applicable statute of limitations bars his claims, the statute of limitations does not apply "to a lingering invalid prior conviction that's currently affecting" him. [*Id.* at 13.] Through his Petition, Petitioner seeks to have the 1994 conviction dismissed or set aside and to be resentenced on the 1995 conviction to fifteen years instead of 25 years. [*Id.* at 14; *see also* Doc. 1 at 1 ("Applicant now seek relief from the higher courts to set aside his prior conviction and correct his sentence which resulted from his invalid prior conviction.").]

As previously stated, on February 21, 2012, Respondent filed a motion for summary judgment. [Doc. 47.] Petitioner filed a response in opposition on March 30, 2012. [Doc. 52.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (i) there is an absence of available State corrective process; or
>>
>>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may

16

consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[12] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir.

---

[12]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

<em>Procedural Bypass</em>

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also*

*Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

### *Statute of Limitations*

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D). However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (alteration in original)). In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit. *Id.* at 417. Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied. *Id.* at 2563.

## DISCUSSION

**Mootness**

A petition for habeas relief may become moot if the petitioner is challenging the calculation of his sentence and is released from custody before the completion of the proceedings on his petition. *See, e.g.*, *Wallace v. Jarvis*, 423 F. App'x 328, 2011 WL 1355195, at *1 (4th Cir. 2011) (per curiam); *see also Lane v. Williams*, 455 U.S. 624, 631 (1982) (holding the petitions at issue were moot because the petitioners had attacked only their sentences, which were terms received for parole violations; their sentences expired during the course of the proceedings; and no civil disabilities stem from a finding that an individual has violated his parole); *North Carolina v. Rice*, 404 U.S. 244, 248 (1971) (per curiam) (stating that "[n]ullification of a conviction may have important benefits for a defendant, . . . but urging in a habeas corpus proceeding the correction of a sentence already served is another matter," and remanding case for reconsideration of the mootness issue). Generally, whether a petition challenging the calculation of the petitioner's sentence is moot is determined by whether the petitioner alleged any collateral consequences stemming from his sentence. *See Wallace*, 2011 WL 1355195, at *1 ("While [the petitioner] challenges the calculation of his release date, he has been released from custody, and he

22

does not allege any collateral consequences that would warrant relief."); *see also Rice*, 404 U.S. at 248 (vacating judgment of the court of appeals and remanding the case to that court because the record failed to reveal whether the petitioner would benefit from having his sentence reduced after he had served that sentence).

Here, as previously noted, Petitioner was released from custody and was on a term of parole from June 30, 2011 until May 28, 2012. Although Respondent filed his motion for summary judgment on February 21, 2012, after Petitioner was released from custody, Respondent failed to address whether the Petition is moot. Liberally construing the Petition, Petitioner has alleged collateral consequences stemming from at least his 1994 conviction, but it is unclear whether Petitioner is in fact subject to collateral consequences as a result of his 1994 conviction and whether he is subject to collateral consequences stemming from his 1995 conviction and/or sentence. Therefore, the Court cannot determine whether or not the Petition is moot now that Petitioner has been released from custody and completed his term of parole; thus, further briefing on this issue would be beneficial.

**Timeliness**

As stated above, under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). Generally, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *id.* at § 2244(d)(1)(A), but is tolled during the time a properly filed collateral review action with respect to the pertinent judgment or claim, such as a PCR application, is pending, *id.* § 2244(d)(2). An application for post-conviction or other collateral review is not properly filed if the application is untimely under

23

state law. *Pace*, 544 U.S. at 414. However, the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418).

Here, it appears Petitioner is attacking his 1994 conviction and 1995 sentence through the Petition, but Respondent addressed the timeliness of the Petition only with respect to Petitioner's 1995 conviction and sentence. The record contains only the indictments and sentencing sheets for Petitioner's 1994 conviction [Docs. 48-4, 48-5, 48-6, 48-7]; thus, the record does not reveal whether Petitioner raised any issues during his plea colloquy or whether Petitioner appealed the 1994 conviction or filed any collateral review proceedings concerning only the 1994 conviction. Thus, while it appears the Petition is untimely,[13] the Court cannot conclusively determine the Petition is untimely with respect to

---

[13] On the record before the Court, Petitioner had one year from September 11, 1994, ten days after his sentence was final and the expiration of the time in which Petitioner could file a direct appeal, to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1); Rule 203(b)(2), SCACR (limiting time to file a direct appeal to ten days). The one-year period in which to file a federal habeas petition would be tolled during the pendency of an application for post-conviction or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), but the record before the Court indicates Petitioner failed to file an application for collateral relief in state court during the one year immediately following the date his sentence became final. Consequently, the § 2244(d)(1) limitations period ran on September 11, 1995. Petitioner filed a PCR application challenging both his 1994 and 1995 convictions on August 10, 2001 [Doc. 48-13], well after the limitations period expired. Further, the PCR court determined the application was successive and untimely, and the court denied the application. [Doc. 48-15.] Therefore, the 2001 PCR application did not toll the one-year AEDPA limitations period with respect to any claims based on Petitioner's 1994 conviction. As a result, the Petition—filed on June 1, 2010, almost fifteen years after the expiration of the limitations period—appears to be time-barred as to claims based on Petitioner's 1994 conviction.

Further, the Petition appears to be time-barred as to claims based on Petitioner's 1995 conviction. The South Carolina Court of Appeals issued remittitur in Petitioner's direct appeal on August 20, 1996. [*See* Doc. 48 at 2.] Consequently, Petitioner had one year from August 20, 1996 to file a federal habeas petition. 28 U.S.C. § 2244(d)(1). Petitioner filed an application for state post-conviction review on November 7, 1996 [App. 122–30], such that 79 days of the one-year limitations period had expired before Petitioner filed his PCR application. The one-year period in which to file a federal habeas petition is tolled during the pendency of an application for post-conviction or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and Respondent concedes the statute of limitations was tolled during the period the PCR application was pending—from November 7, 1996 until September 6, 2000, when the South Carolina Supreme Court issued remittitur in the appeal from the denial of Petitioner's PCR application [*see* Doc. 48 at 3, 19]. Therefore, the

claims based on Petitioner's 1994 conviction without further briefing addressing whether Petitioner challenged his 1994 conviction via direct appeal or collateral review.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion for summary judgment be DENIED and that Respondent be directed to file a supplemental motion addressing, at a minimum, the mootness and timeliness issues as noted in this Report and Recommendation. Additionally, the Court recommends that, in the event the Court finds the Petition is not moot and not time-barred, Respondent also be directed to

---

one-year limitations period began to run again on September 6, 2000 and expired 286 days later on June 19, 2001. Petitioner filed three additional PCR applications and a Rule 60(b) motion after the limitations period ran, but the state courts determined the applications and motion were successive and/or not timely filed. Therefore, Petitioner's additional PCR applications and Rule 60(b) motion did not toll the one-year AEDPA limitations period. *See Pace*, 544 U.S. at 414. As a result, the Petition—filed on June 1, 2010, almost nine years after the expiration of the limitations period—appears to be time-barred as to claims based on Petitioner's 1995 conviction and/or sentence.

Finally, on the record before the Court, Petitioner has failed to demonstrate he is entitled to equitable tolling. The limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418). Liberally construing the Petition and Petitioner's response in opposition to Respondent's motion for summary judgment, the Court concludes Petitioner alleges he is entitled to equitable tolling because his fundamental constitutional rights were violated as he was not aware of the consequences of pleading guilty and he is "suffering from lingering collateral consequences" as a result of his unconstitutional conviction. [*See* Doc. 1-3; Doc. 52.] In *Harris v. Hutchinson*, the Fourth Circuit noted that equitable tolling "has been applied in 'two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" 209 F.3d 325, 330 (4th Cir. 2000) (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). Here, on the record before the Court, Petitioner has failed to show any extraordinary circumstances beyond his control or external to his own conduct that prevented him from filing within the limitations period or that Respondent contributed in any way to his delay in filing his Petition. While Petitioner alleges he did not receive the full guidance of counsel regarding how to attack his 1994 conviction [Doc. 52 at 2], the Court notes any error on the part of Petitioner's 1995 trial counsel did not prevent Petitioner from timely filing a federal habeas petition. Moreover, with respect to this 1995 charges, Petitioner was represented at trial, on direct appeal, with respect to each of his PCR applications, and on appeal of the denial of his first PCR application, providing Petitioner ample opportunity to timely raise this issue to the state courts to preserve the issue for review by this Court. Based on the foregoing, the Court finds the record before the Court fails to demonstrate an extraordinary circumstance prevented Petitioner from timely filing the Petition.

include in his supplement motion his alternative arguments regarding whether Petitioner's claims are exhausted or procedurally barred or should be considered on their merits.[14]

      IT IS SO RECOMMENDED.

                    s/Jacquelyn D. Austin
                    United States Magistrate Judge

June 14, 2012
Greenville, South Carolina

---

[14] If this Report and Recommendation is adopted, the Court also recommends that Respondent be directed to file his supplemental motion within twenty days of the date of the order adopting this Report and Recommendation.